Foote, Pierson & Company, Inc. v. Commissioner.
Foote, Pierson & Co. v. Commissioner
Docket No. 112556.
United States Tax Court
1943 Tax Ct. Memo LEXIS 49; 2 T.C.M. (CCH) 1007; T.C.M. (RIA) 43489; November 23, 1943
*49 Benjamin P. DeWitt, Esq., 423 Center St., South Orange, N.J., and Sidney Pepper, Esq., for the petitioner. Jonas M. Smith, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding is for the redetermination of deficiencies in tax for the year 1941 as follows: Income tax $11,412.91, declared value excess-profits tax $463.12, and excess-profits tax $45,761.17. In its return for the taxable year petitioner deducted as business expense "compensation of officers" in the amount of $124,943.63, of which respondent disallowed $81,029.96. The correctness of respondent's action in this regard is the sole issue submitted for decision. Other adjustments to income made by respondent are not in controversy. Findings of Fact Petitioner is a New York corporation organized in 1917, with its principal place of business at Newark, New Jersey. It is engaged in the manufacture of precision electrical instruments, including radio receiving and transmission sets used in airplanes of the United States Navy. In its income and declared value excess-profits tax return for 1941, petitioner claimed a deduction of $124,943.63 for compensation of officers. This comprised *50 compensation paid in that year to petitioner's officers as follows: to Malcolm G. Pierson, president and treasurer, salary of $18,726.93, plus 10 percent of net profits in the amount of $40,514.98 or total compensation of $59,241.91; to William F. Cassedy, Jr., secretary and chief engineer, salary of $12,932.65, plus 10 percent of net profits in the amount of $40,514,98, or total compensation of $53,447.63; to W. W. Stout, vice-president, salary of $8,828.80; and to C. J. Bischoff, assistant treasurer, salary of $3,425.29. Of the total compensation paid to Pierson, president and treasurer, claimed as a deduction, respondent disallowed the amount of $40,514.98 as in excess of reasonable compensation for the services rendered; and of the total amount deducted as compensation paid to Cassedy, secretary and chief engineer, respondent disallowed a like amount for the same reason. The compensation paid to Pierson and Cassedy in the taxable year was authorized by resolutions of petitioner's board of directors at a meeting held on March 12, 1941. Neither officer mentioned voted on the resolution authorizing his compensation. In 1930 and 1931 petitioner operated at a loss, which resulted *51 in a deficit at January 1, 1932, of $35,374.66. In the early part of 1932 petitioner's business was in a chaotic condition, and its laboratory and factory were poorly organized. It had very little business. In the summer of 1932 its plant was not in operation. At a meeting of the board of directors held on March 29, 1932, Malcolm G. Pierson was first elected president and treasurer of petitioner at a salary of $105.77 per week, subject to termination upon one week's notice. In November 1932, by written contract, petitioner employed William F. Cassedy, Jr., as chief engineer and superintendent in charge of production, to organize petitioner's plant and to perform the engineering work connected with plant management and production, at a salary commencing at the rate of $4,500 per year, and 10 percent of the net profits. The salary specified in the contract was considerably less than Cassedy had theretofore been receiving, and he was induced to enter into the agreement because of the provision by which he was to receive 10 percent of petitioner's profits. In March 1933 petitioner's board of directors voluntarily increased Pierson's salary as president and treasurer $125to per week *52 because of the financial success of his administration during the year 1932, but his salary was so fixed on the understanding that it might be terminated at any time upon one week's notice. In March 1934 the directors adopted a resolution increasing Pierson's compensation to $6,500 per year salary and a bonus of 10 percent for 1933 and 1934 based on net profits. Pierson did not vote on this resolution. For each of the years from 1935 to 1940, both inclusive, the directors voted to pay Pierson and Cassedy a fixed salary, plus additional compensation of 10 percent of the net profits for their services. Similar compensation was voted by the directors for 1941. The compensation of Pierson and Cassedy was at all times subject to reduction or termination upon one week's notice. In March 1934, when Pierson's compensation was fixed by the directors on the basis of a percentage of net profits, Pierson owned 32 shares of petitioner's common stock and 100 shares of its preferred stock, or less than 4 percent of the 1,000 shares of common stock outstanding, and 20 percent of the 500 shares of preferred stock outstanding. During 1941 petitioner had outstanding 1,000 shares of common stock and *53 500 shares of preferred stock, of which Pierson owned 297 3/8 shares of common stock, or less than 30 percent. He had owned these shares of common stock since 1937. After 1936, Pierson owned none of petitioner's preferred stock. Subsequent to 1936 the 500 shares of preferred stock issued by petitioner, while technically outstanding, were held in petitioner's treasury. Cassedy has at no time been a stockholder of petitioner, and is not related to any stockholder of petitioner. Petitioner had 15 stockholders in 1933 and 9 stockholders in 1941. Weston Electrical Instrument Corporation and Aircraft Radio Corporation were during 1941 engaged in the same general kind of manufacturing business as that carried on by petitioner, and in the same general locality. Weston for 1941 paid its officers total compensation of $175,770.71. In that year this company made gross sales of $10,188,291.21, earned gross profits of $5,569,812.93, and had taxable net income of $2,218,494.97. Its selling, general and administrative expense in 1941 amounted to 20.24 percent of net sales. Aircraft Radio Corporation paid its officers in 1941 total compensation of $177,292.69. It had gross sales of $8,211,216, *54 gross profits of $2,664,896.59 and taxable net income in the sum of $2,067,375.97. In 1941, petitioner paid its officers total compensation of $124,943.63, made gross sales of $1,428,476.42, earned gross profits of $573,288.76, and had taxable net income in the amount of $192,216.11. Its selling, general and administrative expense amounted to 10.8 percent of net sales. Pierson, as chief executive officer of petitioner corporation, was in active charge of the general administration of petitioner's affairs; he had no executive assistant, and negotiated all contracts on behalf of petitioner. As treasurer, Pierson arranged for the financing of the business, obtained loans, when necessary, and supervised the preparation of financial statements, reports and tax returns. As sole representative of petitioner in charge of sales, he procured all of petitioner's business. Petitioner employed no salesmen and did no advertising. All of its business came through Pierson alone, without expense to petitioner, other than the compensation paid to Pierson. He devoted his entire time to the business in 1941, and was largely responsible for petitioner's success. Cassedy likewise devoted his entire time *55 to the affairs of the petitioner, in 1941, working 12 to 14 hours per day, six and sometimes seven days per week. He had general supervision of all manufacturing activities, performed the technical duties of chief engineer, and also acted as secretary of the corporation. He was equally responsible with Pierson for the successful operation of the business. The number of petitioner's employees doubled in 1941, and the plant operated on two shifts during that year. Opinion The sole issue for decision is whether or not the salaries and shares of net profits paid by petitioner in the taxable year to two of its officers are deductible from gross income as reasonable allowances for personal services actually rendered. In 1941, petitioner paid to Malcolm G. Pierson, its president and treasurer, a salary of $18,726.93, and to William F. Cassedy, Jr., its secretary and chief engineer, a salary of $12,932.65. In addition to the salaries, petitioner paid to each of these officers as compensation for services 10 percent of the net profits in the amount of $40,514.98, thus making Pierson's total compensation $59,241.91, and Cassedy's total compensation $53,447.63. Respondent raised no objection *56 to deduction of the fixed salaries, but disallowed as unreasonable the amount of $81,029.96, representing the aggregate of the net profits so paid as compensation. Generally speaking, the test of deductibility of compensation payments is whether they are reasonable in amount, and in fact payments purely for services. Distributions of profits in the nature of dividends or in payment of property, of course, are not deductible, but there is no suggestion that the payments involved here fall within either such category. The question of reasonableness of amount, which is the only question presented here, is solely one of fact, and must be determined in the light of the circumstances of each case. Petitioner offered the testimony of a particularly well qualified witness, a banker possessing confidential information in respect of petitioner's business and that of several comparable competitors, who expressed the opinion that the compensation paid by petitioner to its officers was not excessive for the services rendered. While the credibility, competence and integrity of the witness were not impaired by attack, and his opinion is entitled to weight, we prefer to regard the fact-evidence *57 before us as a more satisfactory basis for our decision. In 1930 and 1931 petitioner operated at a loss, and at January 1, 1932, had accumulated operating deficits which materially impaired its capital. Its business was in a chaotic condition, and its laboratories and factory were poorly organized. This disturbing situation obviously brought about the change effected in management in March 1932, when the directors first elected Pierson as president and treasurer. He was voted a rather modest salary of little more than one hundred dollars per week, and this was subject to termination upon one week's notice. In November of the same year the directors employed Cassedy as chief engineer and superintendent in charge of production. His salary was fixed at $4,500 per year, plus 10 percent of the net profits. He was induced to enter into the employment contract because of the incentive compensation. In 1933 the directors increased Pierson's salary specifically because of the financial success of his administration in 1932, and in 1934 his salary was again increased and he was given an additional bonus of 10 percent of the net profits for 1933 and 1934. Pierson and Cassedy were taken on *58 trial, but they made good, and the arrangement whereby a fixed salary and a share of the profits were paid to both was continued by the directors each year, to and including the taxable year 1941. We are not informed in detail as to the financial success of petitioner's business in the intervening years prior to the taxable year, other than the inference that it was entirely satisfactory to the directors and stockholders. However, we do find that in 1941, after payment of all officers' salaries and the aggregate bonus of 20 percent of net profits to Pierson and Cassedy, petitioner had taxable net income of $192,216.11, or a sum sufficient to pay a dividend in excess of $192 on each share of its outstanding common stock. It is clearly indicated that the successful operation of the business was due very largely, if not entirely, to the efficient management by Pierson and Cassedy. In Heywood Boot & Shoe Co. v. Commissioner, 76 Fed. (2d) 586, the court concluded that the additional compensation paid to the two officers, who were the principal managers of the corporation, was reasonable for the services rendered because of the very successful operation of *59 the business due to the efficient management of those officers, notwithstanding a decline in the profits of the taxable year, and also because of the fact that similar compensation had been paid in years prior and subsequent to the taxable year. We might appropriately say of petitioner here what the court stated in its opinion in the Heywood case, namely, In the direct speech of the street, management such as the Heywood Company received is cheap at any price. As a business matter the Heywood Company was justified in paying whatever compensation, within reasonable limits, was required to retain such management. Another general rule, suggested in respondent's regulations and approved by the courts, is that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. Regulations 103, sec. 19.23 (a)-6; Wagner & Son. Inc. v. Commissioner, 93 Fed. (2d) 816. Under this rule, a comparison of the compensation paid by petitioner to its officers with the compensation paid by comparable corporations for like services would be pertinent, and for that purpose respondent offered *60 testimony of officers of Weston Electrical Instrument Corporation and Aircraft Radio Corporation, claimed to be comparable corporations. The material facts established by such evidence are set out in our findings above. The value of this evidence, however, is greatly diminished by the difficulties of making a fair comparison, arising in part from the fact that the kind of duties performed by petitioner's two officers was commingled with other duties performed in part by several officers of Weston and Aircraft, and further in part by failure to show to what extent the successful operations of the business of those corporations were attributable to the efficient management of particular officers comparable to those of petitioner. Still another difficulty encountered is the fact that some of the officers of Weston and Aircraft received indirect benefits in the nature of additional compensation for services, the monetary value of which is not established. Giving due consideration to all factors, we are unable to say that the comparisons urged by respondent indicate that the compensation paid by petitioner to its officers was unreasonable for the services performed. Petitioner was not *61 a closely held or family corporation, and was not dominated by any single stockholder. Certainly it was not controlled through stock ownership by either Pierson or Cassedy. Pierson never at any time owned as much as 30 percent of the common stock, and Cassedy never at any time owned any stock in petitioner. The record clearly shows that the contingent compensation in controversy was paid pursuant to free bargaining between petitioner and the two individuals concerned, and that petitioner was influenced only by a desire to secure and retain their services on fair terms. In such circumstances, as stated in respondent's regulations cited supra, the amount paid should be allowed as a deduction "even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid." We think respondent erred in disallowing the claimed deductions. On the issue submitted, respondent is reversed, but since he made other adjustments to income which are not contested, Decision will be entered under Rule 50.